02-10-007-CV_REH









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00007-CV

 

 


 
 
 James Chafin
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Richard G. Isbell and Fairway Independent Mortgage
 Corporation
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

 

FROM THE 367th
District Court OF Denton COUNTY

----------

 

MEMORANDUM OPINION[1]

ON REHEARING

 

----------

 

          Appellees
Richard G. Isbell and Fairway Independent Mortgage Corporation filed a motion
for rehearing of our memorandum opinion issued December 2, 2010.  To the extent
Appellees argue that this appeal should be remanded, we grant their motion for
rehearing.  We deny the remainder of the motion.[2]

          On
February 10, 2011, Appellant James Chafin filed a “Motion to Amend Judgment,”
which we construe as a motion for rehearing, and a motion to extend time to
file the motion to amend judgment.  We deny James’s motion to extend time to
file the motion to amend.

We
withdraw our opinion and judgment dated December 2, 2010, and substitute the
following.

I.  Introduction

          The
primary issue we address in this appeal concerns the construction of a divorce
decree and whether, as a matter of law, it did or did not divest James of his
interest in certain real property.  In two issues, James argues that the trial
court erred by granting summary judgment for Appellees and by denying his
motion for summary judgment.  We will reverse and render in part and remand in
part.

II. 
Factual and Procedural Background

          The
trial court signed an “Agreed Final Decree of Divorce” dissolving the marriage
of James and Kristine Rynetta Chafin on July 20, 2004.  In dividing the marital
estate, the decree included a disposition of two residences owned by James and
Kristin:  the “Jenkins property” and the “Osprey property.”  The decree stated
the following in regard to the Jenkins property:

          IT IS ORDERED
AND DECREED that the husband, [James], is awarded the following as his sole and
separate property, and the wife is divested of all right, title, interest, and
claim in and to that property:

 

          H-1.   The
following real property, including but not limited to any escrow funds,
prepaid insurance, utility deposits, keys, house plans, home security access
and code, garage door opener, warranties and service contracts, and title
and closing documents:

 

BEING LOT 62, IN
BLOCK 209 OF THE COLONY NO. 24, AN ADDITION TO THE CITY OF THE COLONY, DENTON
COUNTY, TEXAS ACCORDING TO THE MAP THEREOF RECORDED IN CABINET C, PAGE 200 OF
THE MAP RECORDS OF DENTON COUNTY, TEXAS.

 

          This award
to the husband is subject to payment of the sum of $10,000.00 to [Kristine]
upon the sale of the property located at 5916 Osprey Court, The Colony, Texas 
75056 for her portion of equity in this real property, as set forth
hereinbelow.  [Emphasis added.]

 

The
decree ordered James to pay “[t]he balance due . . . on the
promissory note executed by [Kristine] and [James] and secured by Deed of Trust
on the real property awarded in this Decree to [James].”

          Concerning
the Osprey property, the decree stated the following:

          IT IS
ORDERED AND DECREED that the wife, [Kristine], is awarded the following as her
sole and separate property, and the husband is divested of all right, title,
interest, and claim in and to that property:

 

          W-1.  The
use and benefit of the following real property, until it is sold as
set forth hereinbelow:

 

BEING LOT 1, BLOCK B,
STEWART PENINSULA SOUTHSHORE PHASE 1, AN ADDITION TO THE CITY OF THE COLONY,
DENTON COUNTY, TEXAS ACCORDING TO THE MAP THEREOF RECORDED IN THE MAP RECORDS
OF DENTON COUNTY, TEXAS [Emphasis added.]

 

The
decree ordered Kristine to pay “[t]he monthly payments (until the property is
sold) on the promissory note executed by [Kristine] and [James] payable to
Ameriquest Mortgage and secured by deed of trust on the real property located
at 5916 Osprey Court, The Colony, Texas  75056.”

          In
addition to dividing the Jenkins property and Osprey property, the decree
included a section entitled “Provisions Dealing with Sale of Residence,” which
ordered the sale of the Osprey property pursuant to the following terms and
conditions:

1.       The
parties shall list the property with a duly licensed real estate broker
having sales experience in the area where the property is
located . . . .

 

2.       The property
shall be sold for a price that is mutually agreeable to [Kristine] and
[James].  If [Kristine] and [James] are unable to agree on a sales
price, on the application of either party, the property shall be sold under
terms and conditions determined by a court-appointed receiver.

 

3.       [Kristine]
shall continue to make all payments of principal, interest, taxes, and
insurance on the property during the pendency of the sale, and [Kristine] shall
have the exclusive right to enjoy the use and possession of the premises
until closing.  All maintenance and repairs necessary to keep the property in
its present condition shall be paid one-half by [Kristine] and one-half by
[James].

 

4.       The net
sales proceeds . . . shall be distributed as follows:

 

a.       [Kristine’s]
one-half shall be distributed outright to [Kristine].

 

b.       [James’s]
one-half shall be distributed in the following order:

 

i.        Payment to
[Kristine] in the amount of $10,000.00 for her portion of equity in the
[Jenkins property].[3]

 

ii.       Remaining
balance to [James].  [Emphasis added.]

 

          According
to James’s original petition, William and Ramona Bauerly purportedly purchased
the Osprey property from Kristine in March 2005.  James alleged that
“[a]lthough [he] was an owner of the [Osprey property] at the time of the sale,
he was wrongfully excluded from the closing and his name is not on the deed to
the Bauerlys.”  Appellees state that “[i]n connection with the sale of the
Osprey Property to Bauerly, a copy of the agreed divorce decree was recorded in
the Deed Records of Denton County, Texas as evidence that the title to the
Osprey Property was vested in [Kristine].”  In April 2007, Isbell purchased the
property from the Bauerlys, and Fairway provided the mortgage financing.

          In
May 2009, James sued Appellees for a declaratory judgment and for a partition
of the Osprey property.  He alleged that the divorce decree did not divest him
of his ownership interest and title to the Osprey property but, instead, merely
awarded Kristine the use and benefit of the property until it was sold.  James
averred that he owned an undivided one-half interest in the Osprey property;
that the Bauerlys could not have acquired a greater interest in the Osprey
property than that owned by Kristine; that the Bauerlys did not acquire his
one-half interest in the Osprey property; that neither Isbell nor Fairway
subsequently acquired interests in the Osprey property as innocent purchasers
without notice; and that Fairway’s security interest in the Osprey property did
not encumber his undivided one-half interest in the property.[4]

          Appellees
filed a motion for summary judgment on James’s claims for declaratory relief
and for a partition.  They argued that there was no genuine fact issue that
James did not have an interest in the Osprey property because the divorce
decree divested him of all right, title, and interest in and to the property. 
James responded and filed a counter-motion for summary judgment, arguing that
he was entitled to summary judgment on his declaratory relief and partition
claims because the evidence established as a matter of law that the divorce
decree did not divest him of his interest in the Osprey property and,
therefore, that he remained the owner of an undivided one-half interest in the
property.  The trial court granted Appellees’ motion and denied James’s
motion.  This appeal followed.

III. 
Standard of Review

          In
a summary judgment case, the issue on appeal is whether the movant met the
summary judgment burden by establishing that no genuine issue of material fact
exists and that the movant is entitled to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,
289 S.W.3d 844, 848 (Tex. 2009).  We review a summary judgment de novo,
taking as true all evidence favorable to the nonmovant and indulging every
reasonable inference and resolving any doubts in the nonmovant’s favor. 
Mann Frankfort, 289 S.W.3d at 848; 20801, Inc. v. Parker, 249 S.W.3d
392, 399 (Tex. 2008); Sw. Elec. Power Co. v. Grant, 73 S.W.3d
211, 215 (Tex. 2002).  We consider the evidence presented in the light most
favorable to the nonmovant, crediting evidence favorable to the nonmovant if
reasonable jurors could and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.  Mann Frankfort, 289 S.W.3d at 848. 
We must consider whether reasonable and fair-minded jurors could differ in
their conclusions in light of all of the evidence presented.  See Wal-Mart
Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006); City of Keller
v. Wilson, 168 S.W.3d 802, 822–24 (Tex. 2005). 
When
both parties move for summary judgment and the trial court grants one motion
and denies the other, the reviewing court should review both parties’ summary
judgment evidence and determine all questions presented.  Mann Frankfort,
289 S.W.3d at 848.  The reviewing court should render the judgment that the
trial court should have rendered.  Id.

IV. 
Declaratory Judgment

          In
his first issue, James argues that the trial court erred by granting Appellees
summary judgment and by denying his motion for summary judgment on his
declaratory judgment claim because the decree did not, as a matter of law,
operate to convey his interest in the Osprey property to Kristine but merely
awarded her the “use and benefit” of the property until it was sold.  James
concedes that Kristine would have had the authority to sell the Osprey property
without his participation had the decree divested him of his interest in the
property, but he argues that because the decree, which is unambiguous, did not
divest him of his interest, he remained—and continues to be—a joint owner of
the property.  According to James, because he owns an undivided one-half
interest in the Osprey property, Isbell could not have mortgaged more than half
of the property (the half interest that the Bauerlys purchased from Kristine
and that Isbell purchased from the Bauerlys) and the lien asserted by Fairway
is ineffective as to his one-half interest in the property.

          Appellees
agree that the sole issue on appeal is whether the divorce decree, which they
also agree is unambiguous, divested James of title to the Osprey property.  But
unlike James, they argue that “the divorce decree[,] when read as a complete
document, rather than isolating certain phrases, clearly divests [James] of any
title interest in the Osprey Property.”  Appellees base this argument primarily
on the provision in the decree that addresses the division of the Osprey
property and provides that James is divested “of all right, title, interest,
and claim in and to that property.”  In light of this language, they argue that
“[t]he decree . . . clearly states that [James] is ‘divested of all right,
title, interest’ to the property.”  Appellees also rely on the provisions in
the decree making Kristine responsible for the monthly payments and ad valorem
taxes on the Osprey property and ordering James and Kristine to execute and
exchange special warranty deeds.

          An
agreed divorce decree is interpreted according to the law of contracts.  Allen
v. Allen, 717 S.W.2d 311, 313 (Tex. 1986); Chapman v. Abbot, 251
S.W.3d 612, 616 (Tex. App.—Houston [1st Dist.] 2007, no pet.); Soto v. Soto,
936 S.W.2d 338, 341 (Tex. App.—El Paso 1996, no writ).  Our primary concern
when interpreting an agreement is to ascertain and give effect to the intent of
the parties as it is expressed in the agreement.  Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983); Chapman, 251 S.W.3d at 616.  We examine the
writing as a whole in an effort to harmonize and give effect to all the
provisions so that none will be rendered meaningless.  Coker, 650 S.W.2d
at 393.  If the agreement can be given a certain or definite legal meaning or
interpretation, then it is not ambiguous, and the court will construe it as a
matter of law.  Id.; Broesche v. Jacobson, 218 S.W.3d 267, 271
(Tex. App.—Houston [14th Dist.] 2007, pet. denied).  If the agreement is
capable of more than one reasonable interpretation, it is ambiguous.  Broesche,
218 S.W.3d at 271.

          We
agree with James and Appellees that the divorce decree is unambiguous.  We
therefore construe the decree as a matter of law.  See Coker, 650
S.W.2d at 393.

          The
divorce decree orders and decrees that Kristine “is awarded the following
as her sole and separate property” and that James “is divested of all right,
title, interest, and claim in and to that property.”  [Emphasis added.] 
The italicized language, “the following” and “that property,” is intended to
refer to the items of marital property listed immediately thereafter of which
Kristine is awarded as her separate property and James is divested of all
right, title, interest, and claim in and to.  In the absence of identifying
some property that Kristine is awarded (and of which James is divested), the
provision would have no meaning or effect whatsoever.  See Wilde v. Murchie,
949 S.W.2d 331, 333 (Tex. 1997) (cautioning that courts should not give conclusive
effect to a judgment’s use or omission of commonly employed decretal words); Tex.
Workers’ Comp. Ins. Fund v. Lopez, 21 S.W.3d 358, 362 (Tex. App.—San
Antonio 2000, pet. denied).

          The
first item of marital property that Kristine is awarded as her separate
property and that James is divested of all right, title, interest, and claim in
and to is the “use and benefit” of the Osprey property “until it is sold.” 
Although the decree contains a legal description of the Osprey property, it
clearly and unambiguously provides that Kristine is awarded as her separate
property only the “use and benefit” of the property.  This particular provision
simply does not award Kristine full title to the property, including James’s
undivided one-half interest.  Appellees’ interpretation of the decree—that
Kristine was awarded title to the Osprey property—unquestionably renders
meaningless the decree’s “use and benefit” language.

          A
divorce decree awarding a spouse the “use and benefit” of a residence is not
unheard of or uncommon.  In 1915, the Austin court of civil appeals considered
whether a judgment awarding the wife the “use and benefit” of the homestead
during her life divested the husband of his interest and title to the
property.  Wade v. Wade, 180 S.W. 643, 643 (Tex. Civ. App.—Austin 1915,
no writ).  The court concluded that granting the wife “the use of the homestead
during her natural life is not, we think, equivalent to divesting [the husband]
of his title thereto.  It has been expressly held . . . that the court,
in divorce cases, has the right to decree the use and benefit of the homestead
to the wife during her lifetime.”  Id. at 644 (citations omitted). 
Other courts have reasoned similarly.  See Laster v. First Huntsville Props.
Co., 826 S.W.2d 125, 129 (Tex. 1991) (reasoning that divorce decree
awarding wife the “use and occupancy of the residence” created in her rights
analogous to those of a life tenant and in husband a future interest similar to
that held by a vested remainderman); Gilleland v. Meadows, 329 S.W.2d
485, 488 (Tex. Civ. App.—Waco 1959, no writ) (stating that husband had an
interest in property that was awarded to wife for the use and benefit of her
minor children); see also Bakken v. Bakken, 503 S.W.2d 315, 317 (Tex.
Civ. App.—Dallas 1973, no writ) (reasoning that evidence supported trial
court’s decree awarding wife residence for the use and benefit of her and the
minor children and the first $7,500 of the net proceeds from the eventual sale
of the residence).

          Our
construction is supported when we examine the decree as a whole, as we must.  See
Coker, 650 S.W.2d at 393.  The portion of the decree awarding property
to James contains the same decretal language preceding the identification of
property as that found in the part of the decree awarding Kristine property. 
It states that James “is awarded the following as his sole and separate
property” and that Kristine “is divested of all right, title, interest, and
claim in and to that property.”  However, unlike the decree’s award to Kristine
of the “use and benefit” of the Osprey property “until it is sold,” the decree
here provides that James is awarded “[t]he following real property,” including
the title and closing documents.  There is no dispute that this contrasting
language awarded James the Jenkins property.

          Further,
the portion of the decree setting out the terms and conditions of the sale of
the Osprey property supports our construction.  The decree provides that “[t]he
parties” shall list the property, that the property shall be sold for a price
that is “mutually agreeable” to Kristine and James, and that Kristine shall
have the exclusive right to enjoy the “use and possession” of the premises
until closing.  The decree essentially reaffirms that Kristine is merely
awarded the use of the Osprey property instead of title, and it makes little
sense, if any, to order Kristine and James to jointly list the property and to
mutually agree on a selling price if the decree awarded Kristine title to the
property.

          Contrary
to Appellees’ argument, the decree’s award to Kristine of only the “use and
benefit” of the Osprey property does not conflict with its ordering her to make
payments on the property and to pay the ad valorem taxes until the property is
sold.  And we cannot conclude that the portion of the decree ordering that
James and Kristine exchange special warranty deeds in the forms attached to the
decree conflicts with our construction; there are no special warranty deeds
attached to the decree, and thus there are no special warranty deeds that are a
part of the summary judgment record.

          A
case with strikingly similar facts and issues to this case is Starkey v.
Holoye, 536 S.W.2d 438, 439–40 (Tex. Civ. App.—Houston [14th Dist.] 1976,
writ ref’d n.r.e.).  In that case, Starkey and Safford’s divorce decree awarded
marital property to Safford and the minor children “for their use and benefit
as their home, until the youngest of said children shall have reached the age
of eighteen (18) years.”  Id. at 440.  After the divorce, Safford
remarried, and he and his wife later purported to convey the entire
property to the Holoyes by a general warranty deed, which was subject to a
vendor’s lien assigned to United Mortgage Company of Texas.  Id.  Starkey
sued Holoye and United Mortgage Company for title to an undivided one-half
interest in the property, for partition of the property or the proceeds from
the sale thereof, and, among other things, to have liens on the property
declared to be of no force and effect as against her interest in the property. 
Id. at 439.  The Holoyes filed a cross-action against Safford, and the
trial court ultimately denied Starkey’s motion for summary judgment.  Id. 
On appeal, in addition to determining that the divorce decree awarded Safford a
right to reimbursement for payments he made on the property after the divorce,
the court of civil appeals reasoned as follows:

          Since the
property was not partitioned at the time of the divorce, [Safford] and
[Starkey] became tenants in common or joint owners thereof, each owning an undivided
one-half interest.  With a deed on record showing the owners of the property to
be [Safford and Starkey], the Holoyes could not have purchased from [Safford
and his wife] any greater interest in the property than was owned by
[Safford]:  an undivided one-half interest.  Upon their purchase of [Safford’s]
interest, the Holoyes became tenants in common with [Starkey].  [Starkey]
presently owns an undivided one-half interest, subject to a claim by [Safford]
for reimbursement for any payments made on the property after [the date of the
divorce].  Since she is still a joint owner of the property, and absent any
agreement not to partition, [Starkey’s] right to partition is absolute under
[the property code].

 

          Further,
the Holoyes could not mortgage more of the property than they owned. 
Therefore, they could not mortgage [Starkey’s] interest, and the lien asserted
by United Mortgage Company is ineffective as to [Starkey’s] one-half interest.

 

Id. at
441 (citations omitted).  Starkey is instructive on James’s claims for
declaratory judgment and for partition.

          We
have examined the divorce decree as a whole toward the end of harmonizing and
giving effect to all that is written.  See Wilde, 949 S.W.2d at 333.  We
hold that the trial court erred by granting Appellees’ motion for summary
judgment on James’s declaratory judgment claims and by denying James’s motion
for summary judgment on that claim.  The divorce decree did not, as a matter of
law, convey James’s interest in the Osprey property to Kristine, thus divesting
him of title to the property; rather, the decree awarded Kristine only the “use
and benefit” of the Osprey property until it was sold.  Because the divorce
decree did not convey James’s interest in the Osprey property to Kristine, James
and Kristine became tenants in common, Kristine could not have transferred
James’s interest in the Osprey property, Isbell could not have acquired James’s
interest in the property when he purportedly purchased the property from the
Bauerlys, and Fairway’s security interest could not have encumbered James’s
interest.  See Starkey, 536 S.W.2d at 441.  Accordingly, we sustain
James’s first issue.

V.  Partition

          In
his second issue, James argues that he has an absolute right as a joint owner
to a partition of the property.[5]  A joint owner or
claimant of real property or an interest in real property may compel a
partition of the interest or the property among the joint owners or claimants. 
Tex. Prop. Code Ann. § 23.001 (Vernon 2000).  The right to partition has
been characterized as “absolute.”  Grant v. Clouser, 287 S.W.3d 914, 919
(Tex. App.—Houston [14th Dist.] 2009, no pet.).  The rules of civil procedure
set out a multi-step process for partition of real estate.  See Tex. R.
Civ. P. 756–71; Long v. Spencer, 137 S.W.3d 923, 925–26 (Tex.
App.—Dallas 2004, no pet.); Positive Feed, Inc. v. Wendt, Nos.
01-96-00614-CV, 01-96-01250-CV, 1998 WL 43321, at *4 (Tex. App.—Houston [1st
Dist.] Feb. 5, 1998, pet. denied) (op. on reh’g).

          In
light of our holding above and the extent of the record, it appears that the only
part of the partition process that has occurred is the determination of the parties’
shares or interest in the Osprey property.  The trial court, not this appellate
court, is the appropriate venue to address the remaining, unresolved aspects of
James’s claim for partition, whatever they may be.  See Tex. R. Civ. P.
760–71.

VI.  Conclusion

          Having
sustained James’s first issue, we reverse the trial court’s judgment and render
judgment in favor of James on his claims for declaratory relief.  We remand
James’s claim for partition to the trial court for further proceedings
consistent with this memorandum opinion.

 

 

 

BILL MEIER
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; MCCOY and MEIER, JJ.

 

DELIVERED:  March 17, 2011









[1]See Tex. R. App. P. 47.4.





[2]We grant Appellant James
Chafin’s motion to extend time for filing reply brief to Appellees’ motion for
rehearing.





[3]The decree erroneously
provided that Kristine was entitled to payment of $10,000 for her equity in the
Osprey property instead of the Jenkins property.  As pointed out by James, this
was a drafting error because the portion of the decree awarding James the
Jenkins property is expressly conditioned on his payment to Kristine of $10,000
upon the sale of the Osprey property for her equity in the Jenkins property and
section 4(a) provides that one-half of the net sales proceeds are to be
distributed to Kristine for her half share of the property.





[4]James alleged in the
alternative that the divorce decree was ambiguous.





[5]There is no evidence that
James waived his right to partition the property.